IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| J.B. SCOTT,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA;<br>UNITED STATES DEPARTMENT<br>OF AGRICULTURE; and the<br>UNITED STATES FOREST<br>SERVICE,<br><br>Defendants. | Case No.  CV-08-0138-E-BLW<br><br>MEMORANDUM DECISION<br>AND ORDER |

# INTRODUCTION

The Court has before it cross-motions for summary judgment. The Court heard oral argument on February 3, 2009, and took the motions under advisement. For the reasons expressed below, the Court will grant the motion filed by the Government and deny the motion filed by J.B. Scott.

# FACTUAL BACKGROUND

**Memorandum Decision & Order – page 1**

On November 20, 2007, Scott mailed to the United States Forest Service a letter and an application for a special use permit to conduct "private helicopter skiing" on the Fairfield Ranger District of the Sawtooth National Forest (SNF). AR 87-95.  Scott's application requested such permission for up to 30 days per year between December 1 and April 30 for five years.  AR 94.  Scott's application additionally provided that Scott owned the helicopter he proposed to use, and that both Scott and his employee had extensive experience as pilots.  AR 94.

On January 18, 2008, District Ranger Mike Dettori rejected Scott's proposal for failure to satisfy the initial screening criteria in 36 C.F.R. § 251.54, because Scott's proposal was not consistent with the laws, regulations, orders, and policies governing Forest Service land.  AR 116.  Specifically, Ranger Dettori indicated that "Special Order Number 0414-00-009" (the closure order) and the applicable travel map prohibited Scott from landing his helicopter in the Fairfield Ranger District.  AR 116.  On February 11, 2008, Scott filed an administrative appeal, arguing that Ranger Dettori's decision was arbitrary and discriminatory because, among other reasons, the Forest Service had recently renewed Sun Valley Heli-ski's permit for the Fairfield Ranger District.  AR 97-114.  On March 12, 2008, SNF Supervisor Jane P. Kollmeyer informed Scott by letter that Ranger Dettori's decision was not subject to administrative appeal.  AR 303.  Supervisor Kollmeyer

**Memorandum Decision & Order – page 2**

nevertheless explained that § 251.50(c) and the closure order require special use authorization and stated several reasons, including those stated in Ranger Dettori's decision, why the Forest Service would not process Scott's application. AR 305-307.

Scott filed a complaint, alleging that the Forest Service's closure order and its rejection of his heli-skiing proposal violated the Administrative Procedures Act (APA). 5 U.S.C. § 706(2). Scott seeks an injunction barring the Forest Service from prohibiting his proposed heli-skiing, or, alternatively, compelling the Forest Service to issue Scott a special use permit. The Court now has before it the parties' cross-motions for summary judgment on all claims in Scott's complaint.

## ANALYSIS

1.  **Standard of Review**

    a.  **Summary Judgment**

One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of

**Memorandum Decision & Order – page 3**

some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

There is, however, an exception to this rule when cross-motions for summary judgment are filed. In that case, the Court must independently search the

**Memorandum Decision & Order – page 4**

record for issues of fact. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The filing of cross-motions for summary judgment – where both parties essentially assert that there are no issues of material fact – does not vitiate the court's responsibility to determine whether disputed issues of material fact are present. *Id.* Accordingly, since the Court already has a duty to scour the record to resolve cross-motions for summary judgment, the *Carmen* line of cases discussed above does not apply to cross-motions.

Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Circuit "has repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir. 1988). Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must contain testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document. *Id.*

      **b.**    **Review of Agency Action**

Scott challenges the Forest Service's compliance with its implementing

**Memorandum Decision & Order – page 5**

regulations under the National Forest Management Act (NFMA), 16 U.S.C. §§ 1600-1614.  The Court's review of challenges of the Forest Service's decision-making under NFMA is governed by the APA, 5 U.S.C. §§ 701-706, because NFMA contains no express provision for judicial review.  *See Native Ecosystems Council v. United States*, 418 F.3d 953, 960 (9th Cir. 2005).  Under the APA, the Court may set aside agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Although this standard is a "narrow one," the Court is required to "engage in a substantial inquiry[,] . . . a thorough, probing, in-depth review."  *Native Ecosystems Council*, 418 F.3d at 960 (internal quotation omitted).  To have not acted in an arbitrary and capricious manner, the agency must present a "rational connection between the facts found and the conclusions made."  *Id*. (internal quotation omitted).

Agencies are entitled to deference to their interpretation of their own regulations, including Forest Plans.  *Id*.  However, an agency's interpretation "does not control where . . . it is plainly inconsistent with the regulation at issue."  *Id*. (internal quotation omitted).  Moreover, an agency's position "that is contrary to the clear language of a Forest Plan is not entitled to deference."  *Id*. at 962.

**2.    The Requirement for a Special Use Permit**

**Memorandum Decision & Order – page 6**

The Government argues that 36 C.F.R. § 251.50 and the closure order each require a special use permit to land a helicopter in the Fairfield Ranger District.

    **a.**    **36 C.F.R. § 251.50**

NFMA empowers the Forest Service to make rules to regulate the occupancy and use of National Forest lands. *See* 16 U.S.C. § 551. Pursuant to authority, the Forest Service promulgated 36 C.F.R. § 251.50(a), which requires a private user of a National Forest to obtain a special use permit to engage in any activity not specifically exempted. The pertinent exemption here is set forth in § 251.50(c), which exempts "noncommercial recreational activities, such as camping, picnicking, hiking, fishing, boating, hunting, and horseback riding[.]"

The Government asserts that § 251.50(c) does not apply because Scott's employee will receive compensation for piloting Scott's helicopter, which precludes the proposed heli-ski trips from being "noncommercial." The regulations define a "noncommercial use or activity" as "any use or activity that does not involve a commercial use or activity." 36 C.F.R. § 251.51. A "commercial use or activity" is, in relevant part, "any use or activity on National Forest System lands . . . where the primary purpose is the sale of a good or service, . . . regardless of whether the use or activity is intended to produce a profit." *Id.*

Scott's proposed heli-ski trips would be "noncommercial" only if the trips

**Memorandum Decision & Order – page 7**

would not "involve" a commercial activity, such as Scott paying his employee for services rendered on the trips. *See United States v. Strong*, 79 F.3d 925, 929-30 (9th Cir. 1996) (applying similar requirement in § 261.10(c), which prohibits work activity or services conducted without special use authorization). There, the Ninth Circuit held that "uncompensated aid to friends is not the type of 'pirate' outfitter activity that the government seeks to prohibit." *Id.* at 929. The regulations did not, therefore, require special use authorization for gratuitous guiding activities provided by a hunting guide to his friends prior to their permitted commercial hunt as his clients. *Id.* at 930. In contrast, the regulations require a permit for renting and delivering snowmobiles and equipment on National Forest lands when motivated by the prospect of commercial gain in doing so. *United States v. Brown*, 200 F.3d 710, 715 (10th Cir. 1999). In *Brown*, the Tenth Circuit rejected the argument that the permit requirement was inapplicable because Brown did not charge a specific fee, or separately itemize, the only service occurring on National Forest land. *Id.* at 715.

The Court agrees with the Government that the proposed heli-ski trips involve a commercial activity. Scott's application for a permit and his complaint both state that Scott and his employee are experienced helicopter pilots, and Scott proposes to use a helicopter he owns. AR 94; *Complaint* at ¶¶ 9, 11. At oral

**Memorandum Decision & Order – page 8**

argument, however, Scott's counsel indicated that Scott's employee will pilot the helicopter, and argued that the proposed trips would be "noncommercial" only on the ground that they are for private, personal use.  Scott's argument fails because the heli-ski trips will involve compensation to Scott's employee for piloting.  Such compensation need not be separately itemized from other services for which Scott pays his employee.  That Scott's employee will provide services only for Scott's private and personal use does not render the heli-ski trips "noncommercial."

Because Scott's proposed use involves a commercial activity, the Court need not address the Government's arguments that the proposed use is unlike the other recreational activities listed in § 251.50(c), and that the proposed use is for transportation and not recreation.[1]  Section 251.50(a) requires Scott to obtain a permit before engaging in his proposed heli-ski trips.

b.  **The Closure Order**

---

[1] The Court nevertheless notes that these arguments are questionable. Unlike *Everett v. United States*, 158 F.3d 1364, 1368 (D.C. Cir. 1998), the record here contains evidence that the Forest Service has allowed, and even encouraged, heli-skiing without a permit on other National Forest lands.  *See* AR 306-307.  The Court would therefore grant the Forest Service no deference in its determination that heli-skiing is unlike the other recreational activities exempted from the permit requirement in § 251.50(c).  *See Thomas Jefferson University v. Shalala*, 512 U.S. 504, 515 (1994).  Also unlike *Everett*, Scott's helicopter use is not for access to a private home and would be difficult to characterize as anything other than a recreational activity.

**Memorandum Decision & Order – page 9**

As an alternative basis, the Government relies on the closure order. Even "noncommercial recreational activities" require a special use permit if "[a]uthorization of that use is required by an order issued under § 261.50[.]" 36 C.F.R. § 251.50(c)(3). Additionally, when provided by an order, "[l]anding of aircraft, or dropping or picking up any material, supplies, or person by means of an aircraft, including a helicopter" is prohibited. 36 C.F.R. § 261.58(y).

In 2002, the Forest Service published a Travel Map for the Ketchum and Fairfield Ranger Districts, which prohibited landing aircraft except at established airfields. AR 374. Likewise, the Forest Plan for the SNF prohibits motorized use outside of designated travel ways unless otherwise authorized. AR SP 193. On April 14, 2003, pursuant to § 261.50(a) and (b), the Forest Service issued the closure order, which prohibited the use of vehicles in the Fairfield Ranger District in violation of the 2002 Travel Map without a permit. AR 391.

Contrary to Scott's contentions, the 2002 Travel Map and closure order make clear that he may not land his helicopter outside of established airfields without a special use permit. Scott asserts also, however, that the closure order is unenforceable because the Forest Service issued it without conducting a proper analysis under the National Environmental Policy Act (NEPA). 42 U.S.C. §§ 4321-4370.

**Memorandum Decision & Order – page 10**

The Government contends Scott lacks standing because he is outside of NEPA's zone of interests.  A plaintiff suing under the APA must satisfy the requirement that the interest the plaintiff seeks to vindicate is one within the zone of interests to be protected by the statute at issue.  *Nevada Land Action Ass'n v. United States Forest Service*, 8 F.3d 713, 715-16 (9th Cir. 1993).  "The purpose of NEPA is to protect the environment[.]"  *Id.* at 716.  "A plaintiff can, however, have standing under NEPA even if his or her interest is primarily economic, as long as he or she also alleges an environmental interest or economic injuries that are causally related to an act within NEPA's embrace."  *Ranchers Cattleman Action Legal Fund United Stockgrowers of America v. United States Dep't of Agric.*, 415 F.3d 1078, 1103 (9th Cir. 2005) (internal quotation marks omitted).  Additionally, "recreational use and aesthetic enjoyment" are among the sorts of interests NEPA was "specifically designed to protect."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 886 (1990).  *See also Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934, 942 (9th Cir. 2005).

Because Scott's standing is challenged in the context of summary judgment, he must demonstrate standing "with the manner and degree of evidence required" under Federal Rule of Civil Procedure 56(e).  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Scott, however, has submitted no evidence that he seeks to

**Memorandum Decision & Order – page 11**

promote the purposes of NEPA or that he has any interest connected to the environment.  Although the complaint alleges heli-skiing "is a form of winter recreation," it does not allege that Scott seeks to protect the environment by challenging the closure order or that his heli-skiing will be impacted by environmental harm.  *See Complaint* ¶ 4.  Indeed, Scott's complaint does not even cite NEPA or mention any adverse environmental impacts of the closure order.  Scott's NEPA challenge – first fully articulated in his summary judgment brief – does not seem calculated to protect the environment from an inadequate NEPA analysis in issuing the closure order over five years ago.  Rather, Scott's NEPA challenge appears to be a last-ditch effort to invalidate the closure order on procedural grounds unrelated to his interests.

The absence of any evidence supporting a determination that Scott's interest is connected to the environment compels a conclusion that Scott is "more likely to frustrate than to further statutory objectives." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 397 n.12 (1987).  The Court therefore concludes that Scott has failed to raise a genuine issue of material fact as to whether he is within NEPA's zone of interests, and Scott may not, therefore, bring a NEPA challenge.

Because Scott's challenge to the legality of the closure order fails, the Court holds that the closure order provided an alternative basis for the Forest Service to

**Memorandum Decision & Order – page 12**

require a special use permit for Scott's proposed heli-skiing.

## 4. Rejection of Scott's Request for a Special Use Permit

The Forest Service "has broad discretion to grant or deny a special use permit." *Western Radio Services Co., Inc. v. Glickman*, 113 F.3d 966, 971 (9th Cir. 1997). "Neither the NFMA nor the regulations provide special use permit applicants with a right to a hearing." *Id.* at 973. In 1998, the Forest Service promulgated regulations for screening applications for special use permits in an effort to "streamline" processing. *See* 63 Fed. Reg. 65,950 (November 30, 1998). The regulations set up two levels of screening. 36 CFR § 251.54(e)(1), (e)(5). First, at the "initial level," the regulations require Forest Service officials not to further process applications that fail to meet nine screening criteria. *Id.* § 251.54(e)(1)(i)-(ix), (e)(2). If the application satisfies the initial level, the regulations require rejection of any proposal that fails to meet the five "second-level screening" criteria. *Id.* § 251.54(e)(5)(i)-(v).

Ranger Dettori's letter rejected Scott's proposal for failure to meet the first screening criterion of the initial level, § 251.54(e)(1)(i), which requires that the proposal be consistent with applicable laws, regulations, orders and policies. AR 116. Ranger Dettori asserted that the closure order and the 2002 Travel Map prohibited Scott's helicopter landings. As discussed above, however, the closure

**Memorandum Decision & Order – page 13**

order merely prohibits landing a helicopter outside of established airfields *without a special use permit*.  The Court declines to endorse this circular reasoning because it would allow the Forest Service to arbitrarily reject any special use permit application by citing any order prohibiting the proposed use without a special use permit.

At oral argument, Scott asserted that Supervisor Kollmeyer's letter dismissing Scott's appeal could not remedy Ranger Dettori's arbitrary reasoning.  As Supervisor Kollmeyer noted, the regulations provide Scott with no right to an administrative appeal from Ranger Dettori's decision.  *See* 36 C.F.R. § 251.54(e)(2); § 251.86(a); § 251.92(a)(1).  Ranger Dettori's decision was therefore a final agency action ripe for judicial review pursuant to 5 U.S.C. § 704.  *See Idaho Sporting Congress, Inc. v. Rittenhouse*, 305 F.3d 957, 965 (9th Cir. 2002).

Once Scott appealed, however, Supervisor Kollmeyer's dismissal of Scott's appeal constituted a subsequent agency action, which if legally adequate, would render moot a legal challenge to the adequacy of Ranger Dettori's letter.  "An action is moot if no actual or live controversy exists, for example, when [a court] cannot grant effective relief."  *Aluminum Co. of America v. Administrator, Bonneville Power Admin.*, 175 F.3d 1156, 1163 (9th Cir. 1999) (internal quotation marks omitted).  *See also Fund For Animals, Inc. v. Hogan*, 428 F.3d 1059, 1064

**Memorandum Decision & Order – page 14**

(D.C. Cir. 2005) (dismissing as moot claims under the Endangered Species Act and NEPA because during litigation the agency issued a 90-day finding and an environmental assessment, which fully cured the defects of its prior letter and environmental assessment). The Court will therefore consider Supervisor Kollmeyer's letter to determine if it cured the defects in Ranger Dettori's letter.

In addition to repeating Ranger Dettori's reasoning, Supervisor Kollmeyer's letter stated that Scott's proposed use failed to meet other screening criteria. The letter stated that heli-skiing presented a potential safety risk to third persons in the vicinity of landing sites or to other skiers. AR 307. A serious or substantial risk to the public health or safety is among the grounds to reject an application in the initial screening criteria. *See* 36 C.F.R. § 251.54(e)(1)(iii). Supervisor Kollmeyer further reasoned that the proposed heli-skiing may displace other back country users. AR 307. Pursuant to the initial screening criteria in § 251.54(e)(1)(v), proposed uses must not "unreasonably conflict or interfere" with other "authorized existing uses." The letter stated also that Scott's proposed use would only benefit him, and therefore would fail the requirement at the second level of screening in § 251.54(e)(5)(ii), that the use be in the "public interest." AR 307.

Additionally, Supervisor Kollmeyer's letter distinguished the activity authorized for Sun Valley Heli-ski on the grounds that it was available to the

**Memorandum Decision & Order – page 15**

general public and included extensive restrictions and monitoring to protect wildlife as well as client and public safety. AR 307. Contrary to Scott's insistence, the Forest Service was not required to jointly process his application with the renewal of Sun Valley Heli-ski's permit. Applications are mutually exclusive and must be jointly processed only when "to grant one application absolutely precludes all other applicants from operating in the location at issue." *Western Radio Services*, 113 F.3d at 973. Nothing in Supervisor Kollmeyer's letter implies that the applications were mutually exclusive, and Scott "does not in any way contest the granting of the special use permit to Sun Valley Helicopter." *Scott's Opening Brief* at p. 9 n.1.

The reasoning in Supervisor Kollmeyer's letter dismissing Scott's appeal followed the required procedures and was not arbitrary, capricious, an abuse of discretion, or contrary to law. The adequate reasoning in that letter cured and mooted the deficiency in Ranger Detorri's initial letter. Accordingly, Scott's APA claim must fail.

### 5. Conclusion

The Court concludes that both 36 C.F.R. § 251.50(a) and the closure order require a special use permit for Scott's proposed use. Scott's NEPA challenge to the closure order fails because he has not demonstrated his interests are within

**Memorandum Decision & Order – page 16**

NEPA's zone of interests.  Finally, although Ranger Detorri's initial letter to Scott provided only an arbitrary basis upon which to reject Scott's application, the Court holds that the reasoning in Supervisor Kollmeyer's letter dismissing Scott's appeal was not arbitrary or capricious.  The second letter therefore cured and mooted the inadequacy of the initial letter.

## ORDER

In accordance with the terms of the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the Government's motion for summary judgment (docket no. 18) is GRANTED.

IT IS FURTHER ORDERED, that J.B. Scott's motion for summary judgment (docket no. 13) is DENIED.



DATED:  **February 24, 2009**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order – page 17**